FORTEZA *v.* ENRICH.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 718.—Resuelto en febrero 7, 1912.

DIVORCIO — TRATO CRUEL—INJURIAS GRAVES — SUFICIENCIA DE LA DEMANDA— TIEMPO, LUGAR Y MODO DE LOS MALOS TRATOS.—Es suficiente una demanda de divorcio fundada en el trato cruel e injurias graves que determina el artículo 164 del Código Civil Revisado, en la cual se hace la alegación de que "el repetido maltrato de palabras y obras por parte del demandado a la demandante, pegándole y causándole injurias corporales al extremo de tener que abandonar el domicilio conyugal para buscar refugio al lado de sus

padres,'' sin que sea necesario expresar en la demanda las circunstancias detalladas de tiempo, lugar y modo de dichos malos tratos, las cuales pueden reservarse para el período probatorio.

APRECIACIÓN DE LA PRUEBA—PARCIALIDAD, PASIÓN O PREJUICIO.—No demostrandose a este tribunal que el juez sentenciador al apreciar la prueba procediera con parcialidad, pasión, prejuicio o manifiesto error, dicha apreciación no será revocada en apelación.

DIVORCIO—RECONCILIACIÓN—DEFENSA NO ALEGADA EN LA CONTESTACIÓN.—No habiéndose alegado en la contestación a una demanda de divorcio como defensa, la reconciliación de los cónyuges, no puede plantearse dicha alegación por primera vez en apelación.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. López Landrón y Rincón.*

Abogado del apelado: *Sr. Cayetano Coll y Cuchí.*

Abogado de El Pueblo: *Sr. Charles E. Foote, Fiscal.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto por la parte demandada contra sentencia que dictó la Corte de Distrito de San Juan en 10 de marzo del año próximo pasado, declarando roto y disuelto el matrimonio entre las partes del pleito, por causa de trato cruel, debiendo quedar la hija habida de tal matrimonio, aún en la menor edad, bajo la patria potestad de la demandante, sin especial condena de costas.

Dió origen al pleito la demanda presentada por Josefa Forteza que copiada literalmente dice así:

''Comparece la demandante y alega: Que está casada con el demandado desde el mes de octubre de 1909, cuyo matrimonio se verificó en Palma de Mallorca, y del cual nació una niña que está en poder del demandado.

''Que el demandante y demandado han vivido en Vega Baja durante el último año bajo el mismo techo; y que en muchas ocasiones casi a diario, el demandado ha maltratado de palabras y obras, a la demandante, pegándole y causándole injurias corporales, al extremo de verse obligada la demandante a dejar la casa de su esposo y buscar refugio al lado de sus padres.

''En virtud de lo que suplica a la corte que se sirva declarar roto el vínculo matrimonial, y subsistente la patria potestad en el cónyuge inocente, más las costas.''

El demandado al contestar la demanda aceptó el hecho primero de la misma y negó general y específicamente el segundo, sin alegar otras causas de defensa; y celebrado el juicio, la corte dictó sentencia en los términos ya expresados, sometida o nuestra consideración a virtud del recurso de apelación.

En apoyo del recurso invoca la parte apelante como motivos legales los siguientes:

1º. Falta de causa de acción por lo que resulta de la demanda.

2º. Falta de prueba de causa legítima de divorcio en favor de la demandante.

3º. Extinción de la acción de divorcio por reconciliación de las partes.

El artículo 164 del Código Civil enumera entre las causas de divorcio el *trato cruel o las injurias graves,* y relacionando esa causa con la segunda alegación de la demanda que dejamos transcrita, encontramos que los hechos contenidos en dicha alegación determinan la expresada causa de divorcio, por cuanto el repetido maltrato de palabras y obras por parte del demandado a la demandante, pegándole y causándole injurias corporales al extremo de tener que abandonar el domicilio conyugal para buscar refugio al lado de sus padres, constituye verdaderamente el trato cruel exigido por la ley para constituir causa de divorcio.

Las circunstancias detalladas de tiempo, lugar y modo de dichos malos tratos no tenían que alegarse en la demanda, según sostiene la parte apelante, sino que pudieron reservarse para el período probatorio.

Tampoco encontramos sostenible el segundo motivo del recurso.

Cuatro testigos declararon por la parte demandante y cinco por la parte demandada.

Veamos lo que dicen los testigos de la parte demandante.

Juan Forteza, padre de la demandante declara que como a los cuatro meses de casados Josefa Forteza y Conrado Enrich, éste comenzó a maltratar e injuriar a su esposa, lo que hizo una y mil veces, según le refirió su hija, la que el día siguiente de haber regresado de España el testigo, le comunicó la resolución de abandonar el domicilio conyugal para irse al de su padre, pues unos días antes el marido le había pegado una bofetada, cuya señal le mostró, llamándola negra, y diciéndola que le bastaba ser del país para ser negra, disgusto originado por dinero y nada más que por dinero; que Enrich quería pidiera su esposa al declarante.

José Pérez dice que la demandante y el demandado tenían disgustos y peleaban a cada momento, y un día, a fines del año 1910, estando en su casa, contigua a la de los consortes Enrich Forteza, sintió un gran escándalo y vió a la Forteza en brazos de Enrich llorando y quejándose de que le había dado un puntapié, de lo que dió aviso a la casa de Juan Forteza habiendo venido entonces la madre de Josefa y llevádose a ésta.

Francisco Aguiló, socio de Juan Forteza, refiere que un día, en el mes de octubre de 1910, observó aglomeración de muchachos frente a la casa de Conrado Enrich, de quien era amigo íntimo, y habiendo entrado vió que Enrich tenía cogida por el cuello a su señora con una mano, teniendo en la otra un revólver que le quitó y devolvió después de haberlo descargado. Agrega el testigo que Enrich le ha confesado que un día, no sabe por qué motivo, le dió una bofetada a la Josefa, y como ésta buscara refugio en la letrina de la casa, por la parte de arriba que está descubierta, le echaba latas de agua hasta que la obligó a salir de allí.

Josefa Forteza, la demandante, afirma que desde que se casó ha venido Enrich dándole una vida muy mala porque quería pidiera dinero a su padre, y la última vez que la maltrató fué dos o tres días antes de regresar Juan Forteza de España, golpeándola y abofeteándola muchas veces, por lo que hubo de refugiarse en la letrina de la casa de la que salió obligada por los cacharros de agua que por la parte de arriba

le echaba Enrich, habiéndole dado éste entonces un puntapié
·en el vientre, con la circunstancia de encontrarse entonces en
los postreros meses de embarazo.   Que siguió viviendo con el
·esposo en la misma casa y durmiendo con él en la misma cama,
hasta que al regreso de su padre abandonó el domicilio con-
.yugal para volver como lo hizo al hogar paterno.

　　Hasta aquí los testigos de la parte demandante.   Veamos
ahora lo que dicen los de la parte demandada.

　　Conrado Enrich, el demandado, niega que en ocasión al-
.guna haya maltratado de hecho o de palabra a su esposa, pues
siempre han vivido en la mayor armonía y bajo el mismo
techo hasta el 29 de diciembre de 1910 en que la Josefa aban-
·donó el domicilio conyugal para irse al de su padre por exci-
taciones de éste con el fin de pedir el divorcio, habiendo tenido
.graves diferencias con su suegro hasta el punto de haberle
éste maltratado una vez en Mallorca a la salida del teatro,
dándole dos pescozones por haber ido en busca de su esposa
·que había asistido sin su permiso a dicho teatro en compañía
de su padre.

　　José Náter García refiere que presenció cuando Forteza
·propuso a su hija se divorciara de Enrich, quien es hombre de
buen carácter y demasiado tolerante con su suegro, sin que
·entre marido y mujer, cuyo trato ha frecuentado, hayan me-
diado malos tratos de obras o de palabras, pues vivían como
·dos ángeles.

　　Brígida Meléndez dice que la demandante se fué a la casa
paterna y abandonó con disgusto la de su marido por excita-
·ción de su padre Juan Forteza, quien le ofreció tratarla como
.a las demás hijas y pagar los gastos del divorcio, no habiendo
.observado en ocasión alguna que demandante y demandado
.tuvieran disgustos.

　　Manuel Sandoval depone que demandante y demandado
·vivieron cerca de su casa hasta el mes de diciembre de 1910
.y jamás observó que mediaran entre ellos disgustos graves o
·palabras insultantes, pues por el contrario, Enrich daba buen
·tratamiento a su esposa, siendo un hombre· de costumbres

buenas y fino trato.  Agrega que una vez vió que Juan Forteza dió una bofeteda a Enrich, no sabe por qué motivo.

Rosa Pavón refiere que vivió en la casa de los esposos Enrich Forteza unos tres meses; que Enrich es de carácter pacífico y vivía con su esposa en la mejor armonía; y que Juan Forteza sacó a su hija del domicilio conyugal, llevándosela a su propia casa con disgusto de Enrich, quien no había dado motivo para tal resolución.

En síntesis dejamos consignadas las pruebas de ambas partes y los méritos que unas y otras arrojan, no nos permiten llegar a la conclusión de que el juez inferior procediera con parcialidad, pasión, prejuicio o manifiesto error en su apreciación.

Ya hemos dicho antes de ahora que en los casos en que las declaraciones de los testigos sean contradictorias, está dentro de las atribuciones del jurado, o en su defecto, dentro de las del tribunal sentenciador el armonizarlas, si fuere posible, o de lo contrario, decidir a qué parte se debe dar crédito.  La corte inferior dió crédito a las declaraciones de los testigos de la parte demandante y ella estaba para hacerlo en posesión de mejores datos que nosotros, que ni presenciamos los debates del juicio, ni vimos a los testigos, ni oímos sus declaraciones, ni podemos darnos cuenta de su modo de declarar y de las vacilaciones en que acaso incurrieran.

Cierto que tenemos a la vista el escrito de exposición de hechos en que se relatan las pruebas, pero ese escrito no puede presentar a nuestra consideración el cuadro del juicio con la viveza del colorido y amplitud de detalles con que se desarrolló en la corte inferior.

Aceptamos, pues, las conclusiones de hecho de dicha corte, que se sostienen por las pruebas, y aceptándolas tenemos que llegar forzosamente a la conclusión de derecho a que llegó declarando con lugar la demanda.

En cuanto al tercer motivo del recurso como la reconciliación no fué alegada al contestar la demanda, no podemos considerar tal excepción en el presente recurso.

Por las razones expuestas, procede la confirmación de la sentencia apelada.

*Confirmada.*

Jueces concurrentes: Sres. Asociados MacLeary, Wolf, del Toro y Aldrey.